The next matter, number 25-1781, Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. May it please the court, Ned Sackman for Rhode This case arises from Daimler's decision to appoint a competing dealer in RITC's assigned territory under a franchise agreement that required any such appointment to be warranted. RITC sued for breach of contract and breach of the implied covenant of good faith and fair dealing. The district court granted summary judgment to Daimler on both. That was error. I would like to begin with the implied covenant claim because the district court's analysis never grappled with the evidence of pretext in bad faith. That evidence is substantial. First, Daimler's own internal corporate documents reflect a decision to eliminate RITC as part of Daimler's strategy to consolidate its dealer network. Daimler made that decision just months after RITC Well, wasn't that decision to consolidate itself based on concerns with the performance of individual dealers? I'm sorry, I just didn't hear the first part of the question. Wasn't the decision to consolidate itself based on a concern regarding performance of the dealers? The decision to consolidate was in part based on some concern, although there were multiple factors and critically for this case, it was a system-wide strategy. In other words, it wasn't we need to consolidate this particular area of responsibility where our Rhode Island Truck Center operates. It was we need to consolidate regions throughout the country. We need to go from 40 dealers in this region to 10. And so it didn't have to do with specific performance issues of specific dealers. Well, does that fit the record? It seems like there was discussion that they were displeased with RITC's poor performance, that they weren't selling everything that they had on hand, that their service was purportedly not optimal and the like. So it does seem like there were also specific concerns with the dealership. So you have the testimony of William Holscher, who is the key witness for Daimler in this case, and he says that there were issues, that they lived it, and that's how they knew. But what you don't have is documentation of those issues. You don't have a traffic study or some other assessment of the market area, which are the types of things that Mr. Holscher testified would typically be done. Well, that's where you have a little bit more difficulty, right? Because if we accept your argument that warranted essentially means that there should be some grounds, a reason, a basis, for lack of a better term, for the decision, grant that, but then there's no requirement as to what exactly Daimler has to do to reach that conclusion. So I think you're asking for a level of specificity, perhaps, that does not seem to be reflected in the contract. What we're asking for is for Daimler to have made a genuine determination that a condition precedent to the appointment of a new dealer was satisfied. And specifically, in this procedural context, what we're asking for is for a jury to be able to make that assessment as to whether Daimler actually made that determination. There are facts in the record that a jury could conclude that Daimler did make the determination. There are also facts in the record on which a jury could conclude that Daimler never made that. So what are the best facts in that regard for you? That Daimler never made the determination? Correct. Number one, that the consolidation strategy that specifically discusses securing the market for ATG, which is the dealer that was appointed, was a strategy that was adopted just months after RITC opened for business and, therefore, could not have been a strategy that reflected RITC's performance because there simply wasn't any performance yet. Number two, that there is not the type of documentary evidence that Mr. Holscher testified would exist if they followed their typical process for making a determination. Counsel, as Judge Dunlap said, you could have put that into the contract. It was not in the contract. The contract says it's in Daimler's sole discretion, does use the term warranted, which the district court said that related back to the business essence of the contract. And part of the contract was your client was supposed to grow the business and provide good repair work. And the affidavit from Daimler said they didn't do either and that they actually did look at that. They looked at the statistics about your client. So why is there any jury issue here? Because there is also conflicting evidence that goes in the other direction. So what if it's in Daimler's sole discretion and they say they have a reason? I think you argument comes down to the covenant of good faith and fair dealing requires a non-pretextual reason to be given regardless of contract language. Is that what you're really arguing here? I would argue on the covenant of good faith and fair dealing, not so much that the reason must be non-pretextual, but that the exercise of the discretion that the contract provided Daimler must be done in good faith and can't be done for a pretextual reason. And so, for example, the reason that we say the evidence points to is that they wanted to consolidate this dealer network. That does not relate to what the contract provides for, which is, is a new dealer warranted in this particular area of responsibility? Dealer network consolidation is not an area-specific strategy. It's a strategy that is a system-wide one. And therefore, if that was the reason, and there's reason to believe that it is based on evidence that's in the record, that was not... I'm having trouble understanding why, if that was the reason, it was either a breach of contract or a violation of the covenant? It was a breach of contract because the contract required a determination, area-specific, that a new dealer was warranted in that particular territory. It was a violation of the implied covenant of fair dealing because they did not exercise the discretion they had in good faith to consolidate this particular area of responsibility under another dealer. And then they moved forward with that decision regardless of what the performance showed or other area-specific factors showed. And a jury could conclude, based on that evidence and based on the testimonials to Daimler that we lived the performance issues, that that was an after-the-fact justification for what they really did, which was adopt this strategy. The contract objective, which the district court construed to be simply to do a good job of selling and servicing the marketplace, wasn't just that. The dealer has its own reasonable expectations under the contract. Yes, it's a non-exclusive contract. We're not suggesting that the dealer could have expected exclusivity. But the dealer did have a right to expect that it could invest in that territory and do so without danger of some pretextual or bad-faith encroachment upon that territory. Now, to go back through some of the other... Can I? Totally different topic, but there's a related case out here before the First Circuit. What happens if you prevail on that case? What happens to this case if you prevail on that case or if you don't? So, I believe the related case you're referring to is the matter where we've attempted to challenge under the Rhode Island Dealer Protection Statute the appointment of a new dealer in the territory, and there's a constitutional question in that case as to whether the Dormant Commerce Clause would bar application of that statute to protect our dealer. If we prevail in that case, that case would then be sent back to the dealer board for a consideration as to whether or not the dealer statute was violated. Here we have distinct breach of contract and implied covenant of good faith and fair dealing claims for which we seek to pursue damages. So each case actually could proceed in parallel if this case, of course, turns out to be overturned on appeal. So going back to the other evidence of bad faith here, it wasn't just the consolidation strategy. It's also that William Holsher, Daimler's senior executive and its key witness, misrepresented to Rhode Island Truck Center that the new dealer would not be selling freight liner trucks in RITC's territory. And that misrepresentation was made while Rhode Island Truck Center was putting millions into a new facility that would quadruple its operating capacity. But that was an extra contractual statement, right? So how does the implied covenant apply there? Wouldn't we be reading into the contract a new promise that is not contained within the four corners of the contract? No. Again, it's what restricts Daimler's exercise of its discretion under the contract in putting in a new dealer. So if Daimler has discretion to decide whether or not a new dealer is appropriate in the territory, it's got to exercise that discretion in good faith. Here, it didn't do that by concealing what it was doing. And there's actually a case, McAdams in the First Circuit, that recognizes that when you conceal what you're doing, that can be evidence of a violation of the implied covenant. And so when you have Daimler concealing that actually it is putting in a freight liner dealer in RITC's territory, that is appropriate evidence that a jury should get to consider as to whether or not the covenant was breached. There is another piece of important bad faith evidence in the record, which is that Daimler allowed RITC to invest into a proposed move to Massachusetts that was never going to be approved because of the pending appointment of ATGR. And when it denied RITC's application, Daimler told RITC, move west, even though the bulk of the market lay in the east. As this court suggested in McAdams, Milford-Bennington is another case. Such pretextual and bad faith conduct violates the implied covenant of good faith and fair dealing. Yes, RITC certainly ceded discretion to Daimler under the contract, but as the late Judge Selya explained in the Ochniansky case, ceding discretion in a contract is not tantamount to subjecting oneself to legalized tyranny. It doesn't mean Daimler gets to put in a new dealer for any reason or for no reason. Daimler actually has to have a reason for doing it, and they get to decide whether or not the factors that would support a new dealership exist. We're not questioning that, but they've got to make a genuine determination. That genuine determination concept comes from the Timshire case, which Justice Scalia wrote when he was on the D.C. Circuit Court of Appeals, and he examined quite extensively what does it mean to act in good faith in the context of a contract. And he said in that case, by the way, there was no condition precedent in that contract. It was a sales quota contract where the employer had sole discretion to decide what the quota was. But he said even when sole discretion exists, you've got to look at the nature of the contract. What are the goals of the contract? What are the reasonable expectations of the parties? I'll just finish this sentence and then I'll be done. And that forms the governor or the limiter on the discretion that gets exercised. Thank you. Thank you. Thank you. At this time, would Counsel for the Appellee please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Nathan Imfeld on behalf of Defendant Appellee Daimler-Truck. I think it would be fair to say in my view, Your Honors, that this is actually a pretty simple case. From inception, this contract was a non-exclusive dealer agreement that permitted Daimler to appoint competing dealers either in or near RITC's territory. That was clear on the face of the agreement, the use of the word non-exclusive many times. And then we have this language that the parties have spent so much time arguing about, which really is, in my view, more in the vein of a clarification as opposed to an addition. And that clarification is an non-exclusive agreement, and when we're determining whether, where, and when a competing dealer is to be appointed in the territory, the discretion to determine the answer to those questions is with Daimler's and not with RITC. And in essence, what RITC has been arguing for is and now I think the breach of contract question is a difficult one for them, so they've started with the implied covenant question, but in both instances, RITC is trying to impose contractual obligations through the word warranted that don't exist on the face of the agreement. And you know, just to turn to a couple of the ones that were mentioned just now during my colleague's argument, he complains that consolidation is a pretextual reason for adding an additional dealer here, but there's, specifically because there's no determination that's area-specific, right, that is limited to the territory that RITC occupies. But although there is a right to appoint an additional dealer in that territory, there's nothing in the contractual language that says that the reason why has to be limited to considerations within that territory. That's language that RITC is attempting to insert into the agreement that's not present. Similarly, this notion that... So I guess, I sort of had a question about warranted, whether it needs in some way to be tied to the market condition in RITC's area of responsibility. And I think you would say no, it really doesn't. It just has to do with what Daidler wants to consider. I think that's right. And frankly, Your Honor, the record here supports the notion that the reason, the specific reason why this additional dealer appointment is being made is to address concerns about underperforming dealers, both in Rhode Island, but also in the Boston market, whose locations are outside of the territory. So they're appointing a dealer that happens to have its physical location inside the territory, but the goal is to serve South Boston, which they determined had been underserved by the two dealers that were currently serving that market. So really, you know, and again, I don't know that this matters necessarily, but because we're just talking about what the reason was, and in our view, so long as there was a reason, and they made a reason determination, they satisfied the contractual obligation, but that would be what I would point you to in terms of assessing the consideration. So the market consideration was to appoint a dealer that happened to be in this territory, but to serve a market that was both inside and outside the territory. So I think that, before I interrupted you, you were, RITC sort of laid back their, laid out their four, I think, best factual arguments for the good faith, under the good faith claim, and you had started, is the only one you wish to address the first one, or do you have other comments? No, I was going to address some of the other ones, although if you're, if you have a couple of the other facts that were mentioned, right, where Mr. Hoelscher's testimony, or sorry, the facts in the record that suggest that Mr. Hoelscher had told Sean Backroth, the dealer principal of RITC, initially that the new dealer that was going in, in the territory, was going to sell a different product line, Western Star product line, as opposed to the Freightliner product line, and I would simply respond to that by noting, right, that there's, you know, there's no obligation under the agreement that we not appoint an additional not discuss that with you, but there's no notice requirement here either, so it's imposing both a notice requirement and saying that when we're talking to you about what we are contractually allowed to do in our sole discretion, we have to have made up our mind, you know, it's almost like a full transparency requirement, because I think if you look at the factual record here, it's a little muddled. I think he would say it's a don't mislead me responsibility. Don't say we're not going to, that dealer's not going to sell the Freightliner line and then do the opposite. I think that that's his point. Yes, I think that's his point. I think the record supports the notion that to the extent that Mr. Hoelscher said that, it was a mistake, it wasn't an intent, there was no intent to mislead there, and that the investments that were happening at the same time were investments that we were asking RITC to make to improve their existing Freightliner performance in their territory. They were not investments that we were asking them to make to address the market conditions that were happening in the South Boston market that were the basis for the decision to appoint an additional dealer. You keep referring to South Boston. I thought it was South of Boston. There is a difference. Yes, I should be more clear about that, Your Honor. I apologize. The truck traffic that we're trying to capture for service purposes and for sales is in a market that extends South from Boston. Boston Freightliner, one of the two underperforming dealers, I think is located in South Boston itself, but maybe I'm wrong about that. That's the way that, in the record, the market is referred to. Just finally, in terms of the best facts, this idea that they were making an investment and wanted to, one of the requests that they had made was to move their dealer location to Massachusetts, and that's being sort of pointed to as a pretextual. We were asking them to improve their dealer facilities. They wanted to improve their dealer facilities by opening a new facility in Massachusetts. We said no, and that the basis for that is we were secretly going to appoint an additional dealer in Massachusetts. Again, there's no contractual right for them to move their dealer location, and so by bringing the implied covenant of good faith and fair dealing to bear in that situation, you're essentially, again, rewriting the contract to say that to the extent that you're going to ask us to make investments in our dealer facilities, you have to let us do it wherever we want, and that if you don't, then there's pretext and we can get sort of this notion of independent review of what the decision was. What do you do with what I'd call their lack of documentation argument, suggesting that this was essentially a post hoc rationale and the lack of documentation itself suggests pretext and that should go to a jury? Yeah, I mean, I think that the absence of, you know, there's not a complete absence of evidence, right? There are some contemporaneous communications that, again, that suggest that the determination was being made the way we would say that it was being made, the way Daimler says it was being made, and there are some that suggest it was being made the way they say it was being made, but the fact of the matter is that even granting them, right, the notion that, yep, it was all about dealer consolidation, dealer consolidation means what they say it means, you know, we're construing all of the facts in their favor, even if it were a consolidation strategy intended to reduce the number of dealerships in the market, that's still a business determination that Daimler's entitled to make under the contract, right? They're entitled to appoint an additional dealer location in their sole discretion to the extent that RITC doesn't like the business reasons why that happened or thinks that those business reasons are unfair, that doesn't change the nature of the agreement or what it provides for. And so just in sum, though, since we're talking about the implied covenant claim, I did want to mention that it's not clear to me that the implied covenant claim can survive in the absence of a valid breach of contract claim. That's the McNulty case. I think that's an initial hurdle that my colleague will have to overcome before we can get to the implied reasons that we've been talking about. We're really talking about requirements that don't appear anywhere in the face of the agreement. Warranted is doing an awful lot of work there, and I think too much, and I think the district court really did a nice job of outlining why, and obviously the parties have briefed the issue extensively. So unless the court has any further questions, I'll stand down. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. Ned Sackman for Rhode Island Truck Center. Picking up on the McNulty case, we respectfully submit that Dinah misreads that case. As was explained in Ferreira subsequently and other cases, what that case means is simply that you can't have an implied covenant claim without a contract. It doesn't mean you have to prove a separate breach of contract in order to have an implied covenant claim. And so for example, in the Doe versus Brown University case that this court decided, you had both breach of contract claims and implied covenant claims, and the court analyzed them separately and treated, it actually found the breach of contract claim had failed, but said we're going to look at the implied covenant claim and analyze it separately. I want to note that during oral argument, my opponent admitted that there are communications going both ways as to the reason to why the dealership was put in. That's a fact dispute that a jury should get to decide. On the notice requirement, he said there was a mistake on Mr. Holscher's part as to whether or not there was going to be a Freightliner dealership. Number two, that's also a fact issue on credibility that the jury should get to decide. Finally, on the investment in facilities issue, there's actually a case we cited called Anchorage-Chrysler that goes directly to this point where they allowed someone to invest in a facility, and that was on the basis that there weren't going to be other dealers appointed or other, I'm sorry, other lines introduced in Chrysler, and it was pretty much exactly the situation here where we were allowed to make investments under the assumption that there wasn't going to be another dealer appointed because we'd been misled by Mr. Holscher as to whether Freightliner was going to be part of the ATG dealer, and the Anchorage-Chrysler case found a violation of the duty of good faith and fair dealing. This court should do the same. Thank you. Thank you, counsel. That concludes argument in this case.